UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BROWNSTEIN, | : | ELECTRONICALLY FILED |
| Plaintiff, | : | |
| vs. | : | |
| ANTHONY GIEDA; POLICE CHIEF DAVID ELLIOTT; THE CITY OF SCRANTON,; THE SCRANTON POLICE DEPARTMENT; DIANE CHINDEMI, RN; JANE DOE, Phlebotomist; VINCENT POLLINO, MD; LT. JOSEPH SMURL; COMMUNITY MEDICAL CENTER HEALTHCARE SYSTEM and COMMUNITY MEDICAL CENTER, | : | CIVIL ACTION - LAW  JURY TRIAL DEMANDED  NO. 3:08-CV-1634 |
| Defendants. | : | Assigned Judge: Hon. James M. Munley |

**BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ON BEHALF OF DIANE CHINDEMI, RN; JANE DOE (Community Medical Center Phlebotomist); LT. JOSEPH SMURL; COMMUNITY MEDICAL CENTER HEALTHCARE SYSTEM AND COMMUNITY MEDICAL CENTER, t/d/b/a CMC HOSPITAL**

**I.  BACKGROUND**

Plaintiff's Complaint in this matter arises out of an incident which is alleged to have occurred at Community Medical Center on September 4, 2006, wherein the Plaintiff was transported to the hospital by ambulance and police and administered medical treatment. The Plaintiff claims that the medical treatment was unnecessary, that he was forcibly restrained and that blood was forcibly withdrawn from him on that date.

Since this matter is currently before the Court on a 12(b)(6) Motion to Dismiss Plaintiff's Complaint, the relevant facts, which are considered as true for the purpose of this Motion, are contained in the 167 paragraphs of the Plaintiff's Complaint.

**II.     ISSUES**

1. WHETHER THE MOVING DEFENDANTS' MOTION TO DISMISS COUNT II OF THE PLAINTIFF'S COMPLAINT ENTITLED "*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*" SHOULD BE GRANTED?

     Suggested Answer - - Yes.

2. WHETHER MOVING DEFENDANTS' MOTION TO DISMISS COUNTS III, IV AND XIV OF THE PLAINTIFF'S COMPLAINT, EACH DEALING WITH THE CONCEPT OF ASSAULT, BATTERY AND INFORMED CONSENT, SHOULD BE GRANTED?

     Suggested Answer - - Yes.

3. WHETHER MOVING DEFENDANTS' MOTION TO DISMISS COUNT VII OF THE PLAINTIFF'S COMPLAINT ENTITLED "*FALSE ARREST*" WITH RESPECT TO LT. JOSEPH SMURL, COMMUNITY MEDICAL CENTER HEALTH CARE SYSTEM AND COMMUNITY MEDICAL CENTER, t/d/b/a CMC HOSPITAL SHOULD BE GRANTED?

     Suggested Answer - - Yes.

4. WHETHER MOVING DEFENDANTS' MOTION TO DISMISS COUNT VIII OF PLAINTIFF'S COMPLAINT ENTITLED "*FALSE IMPRISONMENT*" SHOULD BE GRANTED?

     Suggested Answer - - Yes.

5. WHETHER MOVING DEFENDANTS' MOTION TO DISMISS COUNT IX OF THE PLAINTIFF'S COMPLAINT ENTITLED "*INVASION OF PRIVACY - DISCLOSURE AND RECEIPT OF PRIVATE/ CONFIDENTIAL PROTECTED MEDICAL INFORMATION*", SHOULD BE GRANTED?

     Suggested Answer - - Yes.

6. WHETHER MOVING DEFENDANTS' MOTION TO DISMISS COUNT XII OF THE PLAINTIFF'S COMPLAINT ENTITLED "*CORPORATE NEGLIGENCE*" SHOULD BE GRANTED?

     Suggested Answer - - Yes.

7. WHETHER MOVING DEFENDANTS' MOTION TO DISMISS COUNT XIII OF THE PLAINTIFF'S COMPLAINT ENTITLED "*VICARIOUS LIABILITY*" SHOULD BE GRANTED?

   Suggested Answer - - Yes.

8. WHETHER MOVING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE GRANTED?

   Suggested Answer - - Yes.

### III. LAW AND ARGUMENT

   A. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Standard

When deciding whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is testing the sufficiency of the Complaint. Johnsrud v. Carter, 620 F. 2nd 29, 33 (3rd Cir. 1980). In reviewing a Complaint under 12(b)(6), the Court must accept as true all well-pleased allegations of fact in the Complaint as well as any "reasonable inferences that can be drawn therefrom". Nami v. Fauver, 82 F. 3rd 63, 65 (3rd Cir. 1996).

In order to properly state a claim the Plaintiff's Complaint must supply "....enough factual matter (taken as true) to suggest the required element(s). This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element(s)." Phillips v. County of Allegheny, 515 F. 3rd 224, 234 (3rd Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L.Ed. 2nd 929 (2007). The United States Supreme Court in Twombly, held the Plaintiff must show a "plausible" claim to relief 127 S. Ct. at 1974, or "reasonably founded hope" of success. Id, at 1969. The Twombly Court went on to state that the Plaintiff must provide more than a formulaic recitation of a claims elements that amount to mere labels and conclusions.

Additionally, the Complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id.

  B.  Argument in Support of Motion to Dismiss Count II of Plaintiff's Complaint entitled "*Intentional Infliction of Emotional Distress*"

The Supreme Court of Pennsylvania has never expressly recognized a cause of action for intentional infliction of emotional distress, but has cited the Restatement of Torts Second §46 setting forth the minimum elements necessary to sustain such a cause of action. Taylor v. Albert Einstein Medical Center, 562 Pa. 176, 181, 754 A.2d 650 (Pa. 2000); see also Shrader v. Siana and Vaughn, LLP, 2005 U.S. Dist. LEXIS 7294; Civil Action No. 03-3510 (E.D. Pa. April 25, 2005). The Restatement of Torts Second §46 provides that one who by extreme and outrageous conduct intentionally or recklessly causes emotional distress to another is subject of liability for emotional distress, and if bodily harm to the other results from it, for such bodily harm." The Restatement further defines "extreme and outrageous conduct" as follows:

> "It has not been enough that the Defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or that his conduct has been characterized by malice, or a degree of aggravation which would entitle Plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Id., comment d. [emphasis added]; see also Hoy v. Angelone, 554 Pa. 134, 720 A.2d 745, 753 (Pa. 1998).

The extreme and outrageous conduct may only be found where the Defendant has knowledge that the Plaintiff is particularly susceptible to emotional distress by reason of some physical or medical condition or peculiarity. Dawson v. Zayre Department Stores, 346 Pa. Super 357, 498 A.2d 648 (1985). The Defendant's conduct must be intentional or reckless in order to

give rise to liability for intentional infliction of emotional distress. <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F. 2nd 81 (3rd Cir. 1987). The recklessness and intention necessary to support the cause of action does not arise simply from the fact that the Defendant's actions were intentional but is based on knowledge on the part of the Defendant that severe emotional distress is substantially certain to be produced by his conduct. <u>Jackson v. Sun Oil Company of Pennsylvania</u>, 361 Pa. Super 54, 521 A.2d 469 (Pa. Super 1987); <u>Hoffman v. Memorial Osteopathic Hospital</u>, 342 Pa. Super 375, 492 A.2d 1382 (Pa. Super 1985).

In the instant matter, while the Plaintiff has at paragraph 74 of his Complaint plead in a conclusory and boiler plate fashion "extreme and outrageous conduct" intentionally inflicted in of a kind which "surpasses all bounds of decency universally recognized in civilized society", Plaintiff does not plead facts consistent with those conclusory allegations. As stated above, the United States Supreme Court in its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2nd 929 (2007) has altered the standard for review of a Motion to Dismiss such that a Plaintiff must provide more than a formulaic recitation of a claim's elements that amounts to more than mere labels and conclusions, but the Complaint's factual allegations must be enough to raise a right to relief above the speculative level.

For the foregoing reasons, Count II of the Plaintiff's must be dismissed with respect to the Moving Defendants.

    C.    <u>Argument in support of Defendants' Motion to Dismiss Counts III, IV and XIV of the Plaintiff's Complaint</u>.

The Plaintiff in Counts III, IV and XIV allege assault, battery and lack of informed consent, respectively. Because of the unique relationship under Pennsylvania law of lack of informed consent to assault and battery Moving Defendants will deal with these together and in reverse order.

At Count XIV entitled "*Failure to obtain informed consent*" Plaintiff is attempting to set forth a claim for lack of informed consent against Moving Defendants, Diane Chindemi, a registered nurse, Jane Doe, a Phlebotomist and the legal entities which constitute the hospital. The allegations contained in Count XIV are alleged in paragraphs 155 through 158. Although it is unclear from what is plead, it is Defendants' assumption from the first 154 paragraphs of the Complaint which are incorporated in Count XIV by reference, that Plaintiff is contending that the Moving Defendants had a duty to obtain "informed consent" from the Plaintiff prior to taking a blood sample.

Plaintiff's claim for failure to obtain informed consent against Nurse Chindemi, Phlebotomist Doe, and the hospital must be dismissed for two (2) reasons. First, the lack of informed consent claim, which is technically a battery under Pennsylvania law has been consistently held to be recoverable only against the surgeon performing the procedure. See Shaw v. Kirschbaum, 439 Pa. Super 24, 30, 652 A.2d 12, 15 (1994); Foflygen v. Zemel, 420 Pa. Super 18, 33, 615 A.2d 1345, 1352-53 (1992). In fact, to the extent that Plaintiffs rely on a battery theory against a hospital Defendant for failure to obtain informed consent, it has been held that the hospital Defendants may be entitled to recover for wrongful use of civil proceedings. See Gentzler v. Atlee, 660 A.2d 1378 (Pa. 1995).

Pennsylvania law is clear that a physician must obtain informed consent before undertaking an operative procedure on a patient, and in doing so must inform the patient of the possible result of the surgical procedure. See Gray v. Grunnagle, 423 Pa. 144, 223 A.2d 663 (1966); Cooper v. Roberts, 220 Pa. Super 260, 286 A.2d 647 (1971); Festa v. Greenberg, 354 Pa. Super 346, 511 A.2d 1371 (1986). In fact, in reviewing 40 P.S. §1301.811-A of the Health Care Services Malpractice Act, the language of the statute references only the duty of a physician to obtain

informed consent of a patient. Id. The Act goes on to note that "a <u>physician</u> is liable for failure to obtain informed consent only if the patient proves that receiving such information would have been a substantial factor in the patient's decision whether to undergo a procedure."

Under Pennsylvania law, when a physician fails to obtain informed consent from a patient prior to performing an operative procedure on that patient, the doctor is liable for that failure and the liability is based upon a theory of battery. <u>Smith v. Boyer</u>, 345 Pa. 66, 497 A.2d 646 (1985). The obligation to obtain informed consent belongs solely to a physician, as the essence of informed consent is that the physician has imparted knowledge to the patient of the risk of the particular procedure under the circumstances of the individual case at issue. <u>Rogers v. Lu</u>, 335 Pa. Super 595, 485 A.2d 54 (1984).

In summary, the duty to obtain informed consent can only be that of a physician and such a claim must fail when made against an RN, a Phlebotomist or a hospital.

Secondly, the duty to obtain informed consent does not pertain to the drawing of a blood sample. 40 P.S. §1303.504 of the MCARE Act dealing with informed consent states, in pertinent part:

"(a) DUTY OF PHYSICIANS. - - Except in emergencies, a physician owes a duty to a patient to obtain informed consent of the patient or the patient's authorized representative prior to conducting the following procedures:

(1) performing surgery, including the related administration of anesthesia.

(2) administering radiation or chemotherapy.

(3) administering a blood transfusion.

(4) inserting a surgical device or appliance.

(5) administering an experimental medication, using an experimental device or using an approved medication or device in an experimental manner.

7

(b) DESCRIPTION OF PROCEDURE. - - Consent is informed if the patient has been given a description of a procedure set forth in subsection (a) and the risk and alternatives that a reasonably prudent person would require to make an informed decision as to that procedure. The physician shall be entitled to present evidence of the description of that procedure and those risks and alternatives that a physician acting in accordance with accepted medical standards of medical practice would provide.

(c) EXPERT TESTIMONY. - - Expert testimony is required to determine whether the procedure constituted the type of procedure set forth in subsection (a) and to the identity of the risks of that procedure, the alternatives to that procedure and the risk of these alternatives.
..."

For all the foregoing reasons, Count XIV of the Plaintiff's Complaint must be dismissed with respect to the Moving Defendants, Diane Chindemi, R.N., Jane Doe, Phlebotomist and Community Medical Center Health Care System and Community Medical Center t/d/b/a CMC Hospital.

At Count IV of the Plaintiff's Complaint entitled "*Battery*" Plaintiff attempts to assert a claim for battery at paragraphs 86 through 92 against the Moving Defendants, Diane Chindemi, R.N., Jane Doe, Phlebotomist, Lt. Smurl, CMC Security, and the hospital Defendants.

In Pennsylvania, to prove a claim of battery one must show that a "Defendant intended to cause a harmful or offensive conduct to the Plaintiff, and that such contact with Plaintiff resulted." Lakitis v. York, 258 F. Supp 2nd 401, 407 (E.D. Pa. 2003).

First, Count IV is in part a duplication of the claim made in Count XIV, referenced above. At paragraph 91 Plaintiff states

> "Defendants failed to obtain informed consent of client before subjecting him to medical testing and procedures."

For the reasons set forth above, paragraph 91 must be stricken. It is difficult to determine from Plaintiff's Complaint what actions are being attributed to each of the Moving Defendants.

With respect to Moving Defendants, Chindemi and Smurl, Plaintiff does not set forth factual allegations which would bring Plaintiff's claim for battery above the speculative level as required in Bell Atlantic Corp. v. Twombly, supra.

With respect to the Defendant, Jane Doe, Phlebotomist, it appears that the allegations against the Phlebotomist, are that she failed to obtain informed consent before withdrawing blood. As stated above, a lack of informed consent under Pennsylvania law pertains only to an operative or surgical procedure and is actionable against the physician only. Therefore, the Plaintiff's battery claim against Jane Doe, Phlebotomist, must be dismissed. Finally, with respect to Community Medical Center Health Care System and Community Medical Center, t/d/b/a CMC Hospital, corporate entities may only act through their agents, servants and employees and could not commit an assault or battery absent vicarious liability. The claim for battery set forth in Count IV with respect to the hospital Defendants simply does not state factually or even in a boiler plate fashion facts or conclusions which establish the elements of a battery.

For all the foregoing reasons, Count IV of the Plaintiff's Complaint must be dismissed with respect to the Moving Defendants.

Count III of the Plaintiff's Complaint is entitled "*Assault*" the allegations contained in Count III are found at paragraphs 76 through 85. Count III of the Plaintiff's Complaint is set forth against the Moving Defendants, Chindemi, Doe, Smurl and the hospital.

In order to sustain a claim for assault under Pennsylvania law, Plaintiff must show that "Defendant intentionally caused an imminent apprehension of a harmful or offensive bodily contact in Plaintiff." Lakitis v. York, 258 F. Supp 2nd 401, 407 (E.D. Pa. 2003).

Again, Plaintiff alleges at paragraph 80 that

> "Defendants failed to obtain informed consent of client before subjecting him to medical testing and procedures."

It is clear that paragraph 80 of the Plaintiff's Complaint must be stricken.

At paragraph 79 of Count III Plaintiff states that "the Defendants assaulted Plaintiff by unlawfully place the Plaintiff in four-point restraints without justifications, forcibly held down, detained and restrained said Plaintiff...". It is unclear from paragraph 79 which of the Moving Defendants, if any, engaged in the activity of holding down and placing the Plaintiff in four-point restraints.

First, with respect to the Defendant, Doe, the only allegation contained in Plaintiff's Complaint attributing conduct to Doe is found at paragraph 17, where Plaintiff alleges that on the "evening of September 3, 2006 into September 4, 2006" Doe had come into contact with the Plaintiff "for the purposes of drawing blood from the Plaintiff". It is noteworthy that the Plaintiff was brought to the Community Medical Center by the police who had reported that he was "having seizures or medical convulsions while being detained at the Scranton Police station". (see paragraph 28 of the Plaintiff's Complaint). In Gouse v. Cassel, 532 Pa. 197; 615 A.2d 331 (Pa. 1992) the Pennsylvania Supreme Court held that

> "Where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, the consent of the patient is "a prerequisite to a surgical operation by his physician and an operation without the patient's consent is a technical assault. (citations omitted) and the burden is on Plaintiff to prove that the operation performed, or substantially that operation, was not authorized by him." (citations omitted) [emphasis added].

Again, if it is the Plaintiff's contention that the act of withdrawing blood on the part of the Moving Defendants was the assault, this would seem to be redundant of Count XIV. However, the Plaintiff's allegations on this issue are so vaguely pled that it is impossible to tell from the 167 paragraphs of the Complaint what actions of each of the Defendants are responsible for, which would constitute an assault under Pennsylvania law.

For all the foregoing reasons, Count III of the Plaintiff's Complaint entitled "*Assault*" should be dismissed.

D. <u>Argument in support of Moving Defendants' Motion to Dismiss Count VII of the Plaintiff's Complaint entitled "*False Arrest*"</u>.

At Count VII Plaintiff attempts to set forth a claim for false arrest with respect to Smurl and the hospital Defendants.

Under Pennsylvania law, false arrest is defined as (1) an arrest made without probable cause or (2) an arrest made by a person without privilege to do so. Pennsylvania Standard Jury Instructions at 13.04. See also <u>Rank v. City of Pittsburgh</u>, 537 Pa. 68, 641 A.2d 289 (Pa. 1994) and <u>McGriff v. Vidovich</u>, 699 A. 2d 797; (Pa. Cmwlth 1997).

First, because Lt. Smurl and the hospital have no authority to make an arrest, a claim for false arrest can only be stated against them based upon the second prong, that being "a person without privilege to do so" made an arrest. There are no allegations anywhere in the Plaintiff's Complaint that the Defendant Smurl or any agent, servant or employee of the hospital Defendants placed Plaintiff under arrest or attempted to do so.

For all the foregoing reasons, Plaintiff's claim for false arrest with respect to Lt. Smurl and the hospital Defendants must be dismissed.

E. <u>Argument in Support of Moving Defendants' Motion to Dismiss Count VIII entitled "*False Imprisonment*"</u>.

The claim of false imprisonment is set forth at Count VIII of the Plaintiff's Complaint in paragraphs 113 through 120 with respect to Moving Defendants, Diane Chindemi, R.N., Jane Doe, Joseph Smurl and the hospital Defendants. Pennsylvania has adopted the Restatement (Second)

of Torts a definition of false imprisonment. Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289 (Pa. 1994). The Restatement (Second) of Torts at subsection 35 defines false imprisonment as

"(1) An actor is subject to liability to another for false imprisonment if

    (a) actor intending to confine the other or a third person within boundaries fixed by the actor, and

    (b) his act directly or indirect results in such confinement of the other, and

    (c) the other is conscious of the confinement or is harmed by it."

The allegations in the Plaintiff's Complaint do not set forth specific activities of the Defendants which would constitute the elements of the tort of false imprisonment. For example, there is nothing in the Plaintiff's Complaint which indicates Chindemi, Doe, Smurl or the hospital acted with the intent required by the Restatement. There is no allegation in the Complaint that Chindmi or Doe acted in any way which would have confined the Plaintiff. Furthermore, the allegations set forth in Count VIII are inconsistent with the commission of an intentional tort, as Plaintiff pleads at paragraph 115 that the "Defendants acting in the course of their employment, detained the Plaintiff in a hospital room." The intentional imprisonment of the Plaintiff is certainly not an act which could be deemed to have been within the course and scope of the employment of Chindemi, Doe or Smurl. Valles v. Elbert Einstein Medical Center, et al., 569 Pa. 542; 805 A.2d 1232 (Pa. 2002).

For the reasons set forth above, Count VIII of the Plaintiff's Complaint should be dismissed with respect to Chindemi, Doe, Smurl and the hospital Defendants.

F.  Argument in Support of Moving Defendants' Motion to Dismiss Count IX entitled "*Invasion of Privacy*".

Under Pennsylvania law, an action for damages for the disclosure of confidential patient information is an action for invasion of privacy for purposes of 42 Pa.C.S. §5523(1). Burger v. Blair Medical Associates, Inc., et al., 207 Pa. Super 164; 928 A.2d 246 (Pa. Super 2007). Pursuant to Pennsylvania law, the tort of invasion of privacy is subject to a one (1) year Statute of Limitation. 42 Pa.C.S. §5523(1). A Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) when an affirmative defense, such as the Statute of Limitations, appears on the face of the pleading. Jones v. Warden, et al. 549 U.S. 199; 127 S. Ct. 910; 166 L.Ed. 2nd 798 (2007). In the present case, the Plaintiff's Complaint alleges a series of events occurring on September 3rd and 4th of 2006. See paragraph 28. The docket will demonstrate that the Plaintiff's Complaint was not filed in this matter until September 2, 2008, nearly two (2) years after the September 4, 2006 incident.

Because the affirmative defense of Statute of Limitations clearly appears on the face of the pleading, the Court should dismiss Count XI of the Plaintiff's Complaint.

G.  Argument in Support of Partial Motion to Dismiss Count VII of the Plaintiff's Complaint entitled "*Corporate Negligence*".

For the reasons set forth above, any and all allegations contained in Count XII involving informed consent must be stricken, as some pertain to the actions of non-physicians and as the procedure, that of drawing blood, is not a procedure for which informed consent is necessary under Pennsylvania law.

H. Argument in Support of the Hospital Defendants' Motion to Dismiss Count XIII of the Plaintiff's Complaint entitled "*Vicarious Liability*".

The actions of Chindemi, Smurl and Doe seem to be based upon their participation in the act of withdrawing blood from the Plaintiff. Even if we assume by way of argument, that each are employees of the hospital, an assault and battery "which results from the lack of informed consent is not the type of action that occurs within the scope of employment." Valles v. Elbert Einstein Medical Center, et al., 569 Pa. 542; 805 A.2d 1232 (Pa. 2002).

Wherefore, Count XIII of the Plaintiff's Complaint must be dismissed.

I. Defendants' Motion to Dismiss Plaintiff's claims for punitive damages as alleged against Defendants, Chindemi, Doe, Smurl and the hospital.

The Plaintiff's Complaint is replete with boiler plate references to the Defendants' conduct, characterizing it as reckless, wanton, outrageous, extreme, as well as other adjectives, resulting in repeated requests throughout the Complaint for punitive damages. The law governing punitive damages against a health care provider has been qualified in the 1996 Amendments to the Health Care Services Malpractice Act, 40 P.S. §1301.812-A and MCARE Act, 40 P.S. §1303.505, which applies to the present matter. In §1301.812-A of the 1996 Amendments, the Pennsylvania legislature stated that "punitive damages may be awarded for conduct that as the result of a health care provider's willful or wanton conduct or reckless indifference to the rights of others". 40 P.S. §1301.812-A(a). The Health Care Services Malpractice Act further provides that a "showing of gross negligence is <u>insufficient</u> to support an award of punitive damages." §812-A is simply a codification of the well settled common law governing punitive damages. See S.V. Coal, Inc. v. Continental Grain Company, 526 Pa. 489, 498, 587 A.2d 702, 705 (1991) (holding that negligence or gross negligence is insufficient to support an award for punitive damages).

Under the MCARE Act, 40 P.S. §1303.505, which applies to the present matter, punitive damages may be awarded only for conduct that is the result of the health care provider's "willful or wanton or reckless indifference to the rights of others." Under the Act a showing of gross negligence is insufficient to support an award of punitive damages. To the extent that the Plaintiffs seek punitive damages against the hospital Defendants under a theory of vicarious liability, their claim must be dismissed, as 40 P.S. §1301.812(c), the Health Care Services Malpractice Act provides that "punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injuries unless it can be shown by a preponderance of the evidence that the party knew of and had allowed the conduct by its agents that resulted in the award of punitive damages.

In the instant matter, the conduct alleged against the individual Defendants does not rise to the level of punitive damages, nor is it alleged anywhere in the Plaintiff's Complaint that the hospital Defendants knew of and allowed the conduct of the individual Defendants.

For all the foregoing reasons, Plaintiff's claims for punitive damages should be dismissed and all references to reckless, willful, wanton and outrageous conduct should be stricken from the Plaintiff's Complaint.

Respectfully submitted,

O'MALLEY, HARRIS, DURKIN & PERRY, P.C.

By: _/s/Gerald J. Hanchulak_
      Gerald J. Hanchulak, Esq.
      Attorney ID PA 56320

345 Wyoming Avenue
Scranton, PA 18503
(570) 348-3711
ghanchulak@omalleyandharris.com