# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BROWNSTEIN,<br>    Plaintiff | : | No. 3:08cv1634 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| ANTHONY GIEDA, individually and in his official capacity as a Member of the Scranton Police Department, POLICE CHIEF DAVID ELLIOT, individually and in his official capacity as a member of the Scranton Police Department, THE CITY OF SCRANTON, THE SCRANTON POLICE DEPARTMENT, DIANE CHINDEMI, JANE DOE, Phlebotomist of Community Medical Center and Community Medical Center Healthcare Systems, DR. VINCENT POLLINO, LT. JOSEPH SMURL COMMUNITY MEDICAL CENTER HEALTH CARE SYSTEM, and COMMUNITY MEDICAL CENTER, d/b/a CMC Hospital,<br>    Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is Defendant Community Medical Center, Community Medical Center Healthcare system, Joseph Smurl, Diane Chindemi and Jane Doe's motion to dismiss. (Doc. 18).

**Background**

This case arises from the September 4, 2006 transport of plaintiff by Scranton, Pennsylvania police and ambulance to the Community Medical Center in that city. (Complaint (hereinafter "Complt.") (Doc. 1) at ¶ 28). According to the plaintiff's complaint, he was transported by Network Ambulance to the hospital and by Scranton Police Car #18 after authorities believed he was having seizures or medical convulsions while in custody at the Scranton Police Station. (Id.). Plaintiff alleges that officers believed he was faking and did not have an emergency problem requiring medical treatment. (Id.). The plaintiff was not subject to any search warrant or other court order. (Id. at ¶ 29).

When plaintiff arrived at the hospital, hospital personnel, including Defendants Vincent Pollino, MD, Diane Chindemi, RN, Lt. Joseph Smurl, and Police Officer Anthony Gieda all sought to have blood drawn from plaintiff's body. (Id. at ¶ 30). Plaintiff, who was conscious, refused this medical treatment and expressed to hospital staff his desire not to be treated to hospital staff. (Id. at ¶ 31). Despite these protests, hospital staff and the Scranton Police restrained the plaintiff, forcibly holding him down while his protests against the unwanted treatment continued. (Id. at ¶ 32). Defendants Gieda and Pollino then held plaintiff down as they and other hospital personnel applied four-point leather restraints to his arms and legs and tied him across the chest to an emergency room gurney. (Id. at ¶ 33). As plaintiff continued to put up physical and verbal resistance, an individual removed blood from

2

his body. (Id. at ¶ 34). During a preliminary hearing in plaintiff's criminal matter, Defendant Gieda admitted that no court order or search warrant compelled plaintiff to submit to this testing. (Id. at ¶ 35). Officer Gieda also admitted that plaintiff never consented to the treatment. (Id.). Plaintiff alleges that defendants Gieda, Smurl and other CMC staff caused bruises and other injuries through their efforts to restrain him. (Id. at ¶ 38). Such restraint also caused plaintiff severe emotional distress. (Id.). Plaintiff alleges that Defendant Jane Doe, a phlebotomist employed by CMC exacerbated the assault and battery on the plaintiff by drawing blood while other defendants held him down. (Id. at ¶ 41). CMC, Defendant Chindemi and Defendant Pollino then provided plaintiff's test results to Defendant Gieda without court order or plaintiff's consent, violating his privacy rights. (Id. at ¶ 42).

Plaintiff further alleges that defendants, recognizing they had violated his rights, conspired to justify their behavior by bringing false disorderly conduct charges against him. (Id. at ¶ 43). As a result of these charges, plaintiff faced up to one year in jail and a $2,500 fine. (Id.). Plaintiff avers that this arrest lacked probable cause and was unjustified. (Id. at ¶ 44). The charges forced plaintiff to retain an attorney. (Id. at ¶ 46). He was also required to attend a preliminary hearing, pre-trial conference, and habeas corpus hearing. (Id. at ¶ 47). A judge in the Lackawanna County, Pennsylvania Court of Common Pleas eventually dismissed the charges against plaintiff. (Id. at ¶ 59).

Plaintiff filed his complaint in this court on September 2, 2008. The complaint

3

contains sixteen counts. Count I names Defendants Gieda, Scranton Police Chief David Elliot, the City of Scranton and the Scranton Police Department on charges that defendants violated plaintiff's constitutional right to be free of excessive force and unlawful search and seizure. Count II raises a claim for intentional infliction of emotional distress against Officer Gieda, Chief Elliot, the City of Scranton, The Scranton Police Department, Diane Chindemi, Jane Doe, Vincent Pollino, Lt. Joseph Smurl, the CMC and the Community Medical Center Healthcare System. Count III is a claim for assault against the same defendants. Count IV alleges battery against those defendants. Count V is a claim for malicious prosecution and abuse of process against Defendants Gieda, Elliot, City of Scranton and the Scranton Police Department. Count VI raises a claim of negligent infliction of emotional distress against all of the defendants. Count VII alleges false arrest against Defendants Gieda, Elliot, the City of Scranton, The Scranton Police Department, Smurl, CMC and Community Medical Center Healthcare System. Count VIII is a false imprisonment claim against all of the defendants. Count IX charges all of the defendants with invasion of privacy through the disclosure of confidential medical information. Count X alleges that Defendants Gieda, Elliott, the City of Scranton and the Scranton Police Department invaded plaintiff's privacy by casting him in a false light. Count XI, raised against the City and the Police Department, contends that plaintiff's injuries were caused by an official policy and/or practice of the city. Count XII avers that Defendants CMC and CMC Health System committed corporate

4

negligence in allowing plaintiff's injuries to occur. Count XIII alleges vicarious liability against those same defendants. Count XIV claims that Defendants Chindemi, Doe, Pollino, CMC Healthcare System and CMC failed to obtain informed consent from plaintiff before treating him. Count XV asserts that the city defendants violated plaintiff's rights under the Pennsylvania Constitution. Count XVI alleges a civil conspiracy among all the defendants to violate plaintiff's rights.

After being served with the complaint, Defendants Community Medical Center, Community Medical Center Healthcare System, Joseph Smurl, Diane Chindemi and Jane Doe filed the instant motion to dismiss. The parties then briefed the issue, bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings the instant complaint pursuant to 42 U.S.C. § 1983. The court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

5

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files such a motion, all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-666 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

**Discussion**

Defendants raise several grounds for dismissing different counts of the complaint. The court will address each in turn.

**A. Intention Infliction of Emotional Distress**

Defendants argue that Count II of plaintiff's complaint, which alleges intentional infliction of emotional distress, should be dismissed. Defendants contend that plaintiff has not alleged facts sufficient to support his claim of intentional infliction of emotional distress, since he has not pled that defendants were aware that severe emotional distress was substantially certain to be produced by their conduct. Instead, they contend, plaintiff has merely laid out "boilerplate" allegations not supported by the facts he alleges.

As a general matter, defendants argue that plaintiff's pleading is insufficient to meet pleading standards recently articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). In examining the standard for a motion to dismiss after the Supreme Court's decision in Twombly, the Third Circuit Court of Appeals has concluded that "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556-57).

Under Pennsylvania law a claim of intentional infliction of emotional distress

7

requires that: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997). Courts "[allow] recovery only in very egregious cases." Id. At the pleading stage, the court is "to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law." Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000). As a matter of law, outrageousness occurs only when "'the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.'" Id. at 428 (quoting Hunger v. Grand Central Sanitation, 670 A.2d 173 (Pa. Super. 1996)). Courts have limited outrageous conduct to that which is "'atrocious' and 'utterly intolerable in a civilized community.'" Id. (quoting Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (1981)).

Defendants insist that plaintiff has not met the pleading standard articulated by the Supreme Court in Twombly because he has not alleged that defendants were aware that plaintiff was particularly susceptible to emotional distress, and that Pennsylvania law requires such knowledge. Pennsylvania courts have concluded that "[t]he requisite 'intention' which one must display for liability to be imposed under the tort of outrage is 'knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by the conduct*." Hoffman v.

8

Memorial Osteopathic Hospital, 492 A.2d 1382, (1985) (quoting Forster v. Manchester, 189 A.2d 147, 151 (Pa. 1963))(emphasis in original).  The court does not read this standard to require an allegation that defendants were aware of particular facts about the plaintiff that would lead them to conclude that their behavior would cause plaintiff severe emotional distress.  Instead, plaintiff must simply allege that defendant engaged in conduct which she knew was substantially certain to cause severe emotional distress.  While knowledge of the particular frailties of an individual might support a claim of such knowledge, a defendant might also engage in conduct so egregious that anyone, no matter how mentally secure, might be subject to severe emotional distress.  Plaintiff has here alleged such facts; he claims that despite his vociferous protests, a team of medical and police staff violently forced him to submit to medical treatment for no good reason.  The alleged conduct was surely outrageous and intentional.[1]   The court will deny the motion to dismiss on this point.

### B.  Counts III, IV and XIV

Defendants seek dismissal of plaintiff's claims against them for assault, battery and lack of informed consent.  Defendants contend that a lack of informed consent claim may only be brought against a surgeon performing a procedure, and may not be brought when the offending action is drawing blood.  Since the informed

---

[1]The court notes that defendants do not argue that the conduct itself was not extreme and outrageous, but instead argues that defendants did not possess the requisite scienter to establish liability.

9

consent claim is raised against a phlebotomist for drawing blood, the claim is unavailable to plaintiff. Since plaintiff's only battery claim against Jane Doe, the phlebotomist, is that she drew blood without plaintiff's consent, she cannot be liable for battery either. In terms of assault, defendants contend that plaintiff is not clear which of the moving defendants was involved in the assault, and that Defendant Doe cannot be liable for assault for drawing blood.

In his reply brief, plaintiff agrees that his claims in Count XIV for lack of informed consent against Community Medical Center and Community Health Care System, as well as Defendants Chindemi and Doe, should be dismissed. The court will therefore grant the defendants' motion on this point.

Defendants claim that plaintiff's inability to bring informed consent claims against them forecloses plaintiff's claims for assault and battery against them as well. Contrary to the defendants' claim, Pennsylvania courts have found a difference between an informed consent sounding in negligence and a battery claim based on medical treatment. "In an informed consent claim grounded in negligence, the matter of permission goes to the scope of the contract between physician and patient, and the primary inquiry is whether the injury suffered was within the known risks of which the patient was informed, or whether the information, particularly as to alternative procedures, was complete." Montgomery v. Bazaz-Sehgal, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999). By contrast, "[i]mplicit in the tort of battery is the recognition that an individual has a right to be free from unwanted and offensive or

harmful intrusions on his own body." Id. Thus, "in a battery claim . . . there need be no physical injury, but only some contact; the matter of permission goes to the quality of the contact, and consent to being so touched is a defense." Id. As such, "[a]n actor is subject to liability to another for battery if he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and an offensive contact with the person of the other directly or indirectly results." Id. (quoting Restatement (Second) of Torts § 18(1)(a)(b)).

Plaintiff's claim is that the medical defendants insisted that he submit to a blood draw, even though he repeatedly and vociferously expressed to them his desire not to be touched. Despite this expressed desire, defendants tied him to a gurney and forced him to submit to the treatment. Plaintiff has therefore stated a claim that defendants, including Doe, intentionally caused a harmful or offensive contact with him. While defendants could offer a defense related to their intent or to the needs of medical treatment, at this point in the litigation the court concludes that plaintiff's claims are sufficient to survive a motion to dismiss the battery claim.

"'Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" Renk v. City of Philadelphia, 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Brothers, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). "An assault requires both the actor's intent to place

11

the individual in imminent apprehension of harmful or offensive contact and the individual actual imminent apprehension." Glass v. City of Philadelphia, 455 F. Supp.2d 302, 365-66 (E.D. Pa. 2006). Here, plaintiff alleges that the individual defendants attempted to hold him down and coerce medical treatment he was attempting to resist. Those allegations, if established, would demonstrate that defendants, including Defendant Doe, intentionally placed plaintiff in imminent apprehension of harmful contact, and the court will deny the motion to dismiss on this point.

Defendants also argue that plaintiff has not pled his claim with sufficient specificity to establish the roles of the individual moving defendants in the offending conduct. The court will deny the motion on these grounds as well. This case is at the pleading stage, and plaintiff has alleged specifically that the moving defendants participated in an effort to force him to submit to medical treatment. Discovery will reveal the precise roles of all involved and establish whether plaintiff can provide sufficient evidence of each individual's role.

**C. False Arrest**

Defendants contend that plaintiff's false arrest claims against them should likewise be dismissed. They argue that plaintiff does not allege that the hospital defendants were authorized to make an arrest or that they did so. In Pennsylvania, "one who confines another, while purporting to act by authority of law which does not in fact exist, makes a false arrest and must respond in damages for whatever civil

12

wrongs he commits." Gagliardi v. Lynn, 285 A.2d 109,111 (Pa. 1971). Plaintiff has here alleged that defendants, including Lt. Smurl and the other moving defendants confined him, purporting to act under the authority of the state, even though they lacked that authority. As such, plaintiff has made out a false arrest claim under Pennsylvania law and the court will deny the motion on this point.

### D. False Imprisonment

Defendants seek dismissal of Count VIII against them. The count raises a claim for false imprisonment. Defendants argue that plaintiff has not pled that they intended to confine plaintiff in a confined space, or that Chindmi or Doe engaged in any action to confine plaintiff.

The parties agree that Pennsylvania law utilizes the Restatement 2d of Torts definition of false imprisonment. As such:

> (1) An actor is subject to liability to another for false imprisonment if
> (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and
> (b) his act directly or indirectly results in such confinement of the other, and
> (c) the other is conscious of the confinement or is harmed by it. RESTAT 2D OF TORTS, § 35.

The court finds that the plaintiff's complaint sufficiently alleges false imprisonment against all of the hospital defendants. Here, plaintiff alleges that the defendants confined him to a gurney by strapping his arms, legs and chest to it. He alleges that they did so with the intention of confining him to that space so they could draw blood from him. Plaintiff also alleges that he suffered physical and psychological harm from their treatment. Defendants contend that plaintiff has not

13

alleged the intent necessary to survive a motion to dismiss on this claim. The court notes, however, that plaintiff has alleged that defendants purposely tied him to the gurney to keep him from resisting efforts to draw blood. He has therefore alleged the intent necessary to survive a motion to dismiss. The court will deny the motion on this point.

### E. Invasion of Privacy

Defendants argue that plaintiff's claim for invasion of privacy is barred by a one-year statute of limitations. Plaintiff agrees that he cannot prevail on this claim and withdraws it voluntarily against the moving defendants. The court will therefore grant the motion on this point.

### F. Corporate Negligence

Defendants argue that plaintiff's corporate negligence claims in Count XII related to the alleged lack of consent for the drawing of blood must be dismissed, since plaintiff cannot prevail on that claim. Since plaintiff has agreed that he cannot prevail on an informed consent claim related to the drawing of blood, the court will grant this motion insofar as it seeks dismissal of corporate negligence claims related to the lack of informed consent for blood draws.

### G. Vicarious Liability

Defendants argue that plaintiff's claim against the hospital and the health system must be dismissed because plaintiff's claims for assault and battery are not the sort of claims which produce vicarious liability. "As a general rule, a master may

14

be held liable for the acts of the servant when those acts are committed during the course of his employment and within the scope of his authority." Valles v. Albert Einstein Med. Ctr., 805 A.2d 1232, 1237 (Pa. 2002). Moreover, "[a] master may be vicariously liable even in the case of assaults committed by the servant." Id. Defendants argue that plaintiff's claims against Chindemi, Smurl and Doe are based on their participation in the unauthorized blood draw. They offer no argument that these defendants are not employees of the hospital, but instead contend that a hospital cannot be liable vicariously for an assault and battery that stems from a lack of informed consent.

In Valles, relied upon by the defendants, the Pennsylvania Supreme Court found that the duty to obtain informed consent and the manner in which a doctor obtains that consent is under the control of the doctor, not the hospital, and thus "as a matter of law, a medical facility lacks the control over the manner in which the physician performs his duty to obtain informed consent so as to render the facility vicariously liable." Id. at 1239. This case is different. Here, the alleged assault and battery comes not because defendants drew plaintiff's blood without informing him of the risks inherent to the procedure, but because they held him down and forced him to submit to a procedure despite his vociferous protest against it. The injury came not because of a lack of explanation, but because of direct force. The case is therefore more like Orr v. William J. Burns International Detective Agency, 12 A.2d 25 (Pa. 1940). In that case, the Pennsylvania Supreme Court determined that an

15

employer could be vicariously liable for the actions of an employee who shot a striker while serving as a guard during a contentious labor dispute. Id. at 26. The court concluded that "'[t]he master who puts the servant in a place of trust or responsibility, and commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another.'" Id. at 27 (quoting Brennan v. Merchant & Co., 54 A. 891, 892 (Pa. 1903)). Here, the individual defendants were employed to organize and assist treatment of patients. They allegedly exercised poor judgment and injured plaintiff, and the corporate defendants could be vicariously liable for the results of their actions. The court will deny the motion on this point as well.

### H. Punitive Damages

Defendants argue that the conduct alleged in the complaint is not reckless enough to justify awarding punitive damages against the individual defendants. In Pennsylvania, "'[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" Hutchinson ex rel. Hutchinson v. Luddy, 870 A. 2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)). Since "punitive damages are penal in nature," they are available "only in cases where the defendant's actions

16

are so outrageous as to demonstrate willful, wanton or reckless conduct." Id. In determining whether to award punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" Feld, 485 A.2d at 748.

Here, plaintiff alleges that defendants violently forced him to submit to medical treatment that had no justification. Defendants allegedly injured plaintiff as they attempted to secure him to a gurney, ignoring his attempts to resist that treatment. If a jury finds that such behavior occurred and that defendants had no reasonable justification for their actions, a jury could find the conduct outrageous and reckless and award the plaintiff punitive damages. The court will deny the motion on this point as well.

**Conclusion**

For the reasons stated above the court will grant the motion in part and deny it in part. An appropriate order follows.

17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT BROWNSTEIN,** | : | No. 3:08cv1634 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **ANTHONY GIEDA,** individually and in his official capacity as a Member of the Scranton Police Department, **POLICE CHIEF DAVID ELLIOT,** individually and in his official capacity as a member of the Scranton Police Department, **THE CITY OF SCRANTON, THE SCRANTON POLICE DEPARTMENT, DIANE CHINDEMI, JANE DOE,** Phlebotomist of Community Medical Center and Community Medical Center Healthcare Systems, **DR. VINCENT POLLINO, LT. JOSEPH SMURL COMMUNITY MEDICAL CENTER HEALTH CARE SYSTEM,** and **COMMUNITY MEDICAL CENTER,** d/b/a CMC Hospital, **Defendants** | : | |

## MEMORANDUM

**AND NOW**, to wit, this 13th day of August 2009, Defendants Diane Chindemi, Jane Doe, Lt. Joseph Smurl, Community Medical Center Health Care System and Community

Medical System's motion to dismiss (Doc. 18) is hereby **GRANTED IN PART** and **DENIED** in part, as follows:

1) Plaintiff's claim for lack of informed consent in Count XIV is hereby **DISMISSED**;

2) All of plaintiff's claims against the moving defendants for invasion of privacy are hereby **DISMISSED**;

3) Plaintiff's claims for corporate negligence stemming from his informed consent claims are hereby **DISMISSED**; and

4) The motion is **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**